# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN BARNWELL AND BAMBI STETLER, <br> Plaintiffs, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE COMPANY, <br> Defendant. | CIVIL ACTION <br><br><br> NO. 16-4739 |

## MEMORANDUM OPINION

On August 3, 2015, while they were renovating it, Plaintiffs' home flooded. The next day, they reported the flood to their home insurer, Defendant Liberty Insurance ("Liberty"). After investigating the cause and extent of the damage, Liberty made several payments to Plaintiffs. Plaintiffs sought additional payments, which Liberty denied. Plaintiffs then sued, alleging breach of contract and bad faith.

Liberty has filed a motion for partial summary judgment on Plaintiffs' bad faith claim, which is based on Liberty's refusal: (1) to pay to replace the entire marble kitchen floor; (2) to pay for a two bedroom suite; (3) to pay for additional costs for food; and, (4) to pay for depreciation. For the reasons set forth below, Liberty's motion shall be granted.

## I. Legal Standard

Summary judgment will be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute exists "when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). Notably, in instances where the

nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986).

In making and responding to motions for summary judgment in this district, attorneys are required to point to the record to show where genuine disputes exist. It is not the province of the Court to search for these disputes. *See Russell v. City of Philadelphia*, --- Fed. App'x ---, 2017 WL 4548072 (3d Cir. 2017) (affirming dismissal by the District Court of Plaintiffs' claims for attorney's failure to adequately cite to particular parts of the record). Additionally, this own Court's policies and procedures, publicly available for reference, require that parties cite to the record in summary judgment briefing. *See* Beetlestone, J., *Policies and Procedures* 6-8 (July 2016), *available at* http://www.paed.uscourts.gov/documents/procedures/beepol.pdf.

To prevail on a claim of bad faith under Pennsylvania law, "the plaintiff must present clear and convincing evidence [:] (1) that the insurer did not have a reasonable basis for denying benefits under the policy [;] and[,] (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, --- A.3d ---, 2017 WL 4296351, at *1 (Pa. 2017). Proof of a motive of ill-will or self-interest is not a prerequisite but is probative evidence of the second prong. *Id*.

II. **Facts and Analysis**

On August 4, 2015, Plaintiff Stetler called Defendant Liberty to report that her house was flooded by water the prior day. An initial inspection of Stetler and Barnwell's house occurred on August 10, with further inspections occurring thereafter.

2

### A. Marble Replacement Cost-Based Claim

Liberty hired a restoration company to prepare an estimate of the damage. That company noticed one marble tile was loose in the kitchen but concluded that the remaining tiles and subfloor were secure, so it provided an estimated amount to repair the loose tile. Liberty made a payment to the Plaintiffs based on that estimate and sent Plaintiffs a settlement letter which required them to contact Liberty before beginning any work should their contractor's estimate of the work exceed Liberty's estimate. Plaintiffs did not contact Liberty regarding any additional costs for the tile work. Rather, they replaced the entire marble kitchen floor and then asked Liberty to pay for it. Liberty declined.

Plaintiffs' do not point to any competent record evidence to subvert the restoration company's determination that only one marble tile needed to be reinstalled. Plaintiff Barnwell himself testified at the arbitration hearing that only four to six of the tiles were ruined. Even so, neither Plaintiff contacted Liberty to tell it that there was more damage to the floor tiles than the restoration company had identified and that the cost of repair would, accordingly, be higher. Instead, they replaced the entire floor and asked Liberty to pay for it. Under the circumstances, it was not unreasonable for Liberty to deny benefits under the policy.

### B. Lodging-Based Claim

As Liberty investigated the damage and repairs were made, Plaintiffs and their two children stayed in a hotel. Liberty paid for the hotel pursuant to Plaintiffs' insurance policy, which provides as follows:

> **Coverage D–Loss of Use**
>
> If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment will be for the

shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

To find a place to stay for Plaintiffs, Liberty used its vendor, ALE Solutions.

Plaintiffs' home has three bedrooms, and each of the two children has a room. Initially, Liberty housed Plaintiffs in a two-bedroom suite, but they requested a transfer to a better location. No two-bedroom suites were available, so the family moved into a one-bedroom suite at Home2 Suites in Philadelphia, Pennsylvania. Barnwell sent Liberty a text stating, "[W]e are not mobbing [sic] from hotel to hotel the kids need stability. [W]e are at [H]ome2 Hilton suites. 12th and [A]rch. [K]ids['] school near by [sic]."

Plaintiffs claim that Liberty refused in bad faith to provide Plaintiffs a two-bedroom suite and now acts in bad faith by not paying the difference. Plaintiffs cite no record evidence suggesting Liberty unreasonably refused to provide them a two-bedroom suite. To the contrary, Liberty points to evidence that it did attempt to do so – after Plaintiffs requested to move from a two-bedroom suite already being provided by Liberty – but there were no two-bedroom suites available in the location Plaintiffs requested. Plaintiffs also do not identify a provision in the insurance contract obligating Liberty to pay the difference.

### C. Food-Based Claim

Plaintiffs claim there was no full kitchen in the Home2 Hilton suite, so they could not cook. Accordingly, Plaintiff Barnwell asked Liberty whether he could receive money for food. Liberty's vendor, ALE Solutions, had reported that the suite did contain a full kitchen. Thus, Liberty did not pay money for food.

When Plaintiffs complained that they did not have a full kitchen in the suite, Liberty investigated with ALE. Plaintiffs dispute that Liberty was advised there was a full kitchen but cite no record evidence suggesting that ALE told Liberty otherwise. They merely offer an out-

4

of-context and unexplained photo of a hot plate, without any evidence suggesting that Liberty had this photo, that ALE had this photo, or even that this photo was from the Home2 Hilton suite in which they stayed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("the adverse party must set forth *specific facts* showing that there is a genuine issue for trial.") (emphasis added) (internal citations omitted). This evidence, viewed through the summary judgment prism, cannot support an inference that Liberty did not have a reasonable basis for refusing to pay Plaintiff's for food.

### D. Depreciation-Based Claim

Liberty made several payments to Plaintiffs over the course of its investigation, each of which made deductions for depreciation. More specifically, Liberty deducted $1,867.54 in depreciation from its property damage payment as well as $2,346.45 and $1,358.33 from its payments covering personal property damage and appliances, respectively.

Plaintiffs' lawyer in a letter dated December 3, 2015, asked that Liberty "reconsider [its] position on depreciation." Plaintiffs' insurance policy provides: "The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation." But, the policy further provides that Liberty is required to "pay no more than the actual cash value of the damage until actual repair or replacement is complete." Actual cash value is the "cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence."

Plaintiffs offer no evidence suggesting Liberty's continued withholding of depreciation lacks a reasonable basis. By the terms of the policy, Liberty is not obligated to pay depreciation until repair or replacement is complete. Plaintiff has not pointed to record evidence that the

5

repairs are complete or that it has notified Liberty that the repairs are complete.  Absent such evidence, it was not unreasonable for Liberty to withhold payment to Plaintiffs for any deductions for depreciation.

For the reasons set forth above, Plaintiffs have not set forth a bad faith claim as set forth in *Rancosky* and, thus, such claim shall be dismissed.

An appropriate order follows.

**BY THE COURT:**

 **/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

Date: 11/15/2017